## WM. CARAWAY & SONS v. KENTUCKY REFINING CO.

### (Circuit Court of Appeals, Sixth Circuit.  August 3, 1908.)

### No. 1,790.

1. COURTS—FEDERAL COURTS—AMENDMENT OF PROCESS.

Where the declaration in an action in a federal court, a copy of which was served upon defendants with the summons, was properly entitled in the district and division of the district in which defendants resided, but through mistake the summons required them to appear in another division of the district, such fact was not ground for abatement of the suit; but the court had power in its discretion, under Rev. St. § 948 (U. S. Comp. St. 1901, p. 695), to permit an amendment of the summons and its reservice in the amended form.

2. SET-OFF AND COUNTERCLAIM—COUNTERCLAIM—ACTION ON CONTRACT.

To avoid a multiplicity of actions, a defendant, when sued on a contract, may file a counterclaim for damages arising out of the same transaction, even though it sounds in tort, as for fraud inducing one of the terms of the contract, and have it determined in the same suit.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Set-off and Counterclaim, §§ 49, 50.]

3. DEPOSITIONS—ADMISSIBILITY IN EVIDENCE—PREMATURE TAKING.

Depositions relating to the merits of the case, taken before it was at issue, while a plea in abatement was pending, and at which defendants

did not appear, were premature, where no emergency existed, and, on proper objection, should have been excluded.

4. SALES—CONSTRUCTION OF CONTRACT—SALE BY SAMPLE.

    A contract made by the acceptance of an offer "for one million first-class ¾x35½ inch red oak staves, guaranteed to be equal to the sample staves received from you * * * on which the average width is 5½ inches," did not require the delivery of staves 5½ inches in width, but staves equal in dimensions to the samples, whether more or less than such width.

In Error to the Circuit Court of the United States for the Eastern Division of the Western District of Tennessee.

Thomas C. Rye, for plaintiff in error.

Wassel Randolph, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. This is a suit brought by the Kentucky Refining Company to recover damages for the breach of a contract which it alleges it made with the plaintiffs in error, Caraway, for the sale by them to the refining company of 1,000,000 oak staves intended to be used in barrel making. The suit was brought by the filing of a declaration on June 11, 1906, in the Circuit Court of the United States for the Eastern Division of the Western District of Tennessee, and at the same time filing a cost bond and suing out a summons which, together with copies of the declaration, was served upon the defendants, severally. The declaration, the cost bond, and the summons were each properly entitled "In the Circuit Court of the United States for the Eastern Division of the Western District of Tennessee," and the cost bond describes the suit as one commenced in said district "at Jackson," which is the place for holding the court in the Eastern division. But in the summons the defendants were required to appear before the court in the "Western district of Tennessee at Memphis," which is the place for holding the court in the Western division of the district. The defendants, who were residents of the Eastern division, filed a plea in abatement in the court for each division, that they resided in the Eastern division and were unlawfully required to appear at Memphis and not at Jackson, and that the court was without jurisdiction. Upon an affidavit of the clerk that the mistake arose from his inadvertently using a blank summons adapted to the Western division of the district, and upon inspection of the record, the court allowed a motion to amend the summons by making it read to appear "at Jackson," instead of "at Memphis," and thereupon the court ordered another summons to issue in the corrected form and be served upon the defendants, and overruled the plea in abatement.

Enough has been stated to present the first question raised, which is whether the court acquired jurisdiction of the parties defendant. They contend that inasmuch as they were not summoned to appear at Jackson in the Eastern division, but at Memphis in the Western division, the court sitting at the former place had no authority to amend the summons, or to issue what they term an alias summons; but the declaration and summons first served contained sufficient to show them that probably a mistake in the place to which the writ was returnable

was made, and it was a proper case in which to exercise the discretion of the court to amend conferred by the statute of jeofails, (Rev. St. § 948 [U. S. Comp. St. 1901, p. 695]), which provides as follows:

"Any Circuit or District Court may at any time, in its discretion, and upon such terms as it may deem just, allow an amendment of any process returnable to or before it, where the defect has not prejudiced and the amendment will not injure the party against whom such process issues."

This assignment of error is therefore overruled.

The defendants demurred to the declaration upon grounds which do not seem to require consideration, separately from that given herein to other questions. The demurrer was overruled. The defendants thereupon pleaded several defenses to the action, and in the fifth paragraph set up a counterclaim against the plaintiff founded on an averment that in the making of the contract sued on the plaintiff had fraudulently misled and deceived the defendants in respect to the dimensions of the samples of staves sent by the defendants to the plaintiff as the basis of the proposed agreement of purchase and sale.

Before proceeding further, it is necessary to state the circumstances and the nature of the contract. The plaintiffs on April 19, 1901, solicited an offer for red oak staves in the rough—that is, the material out of which the plaintiffs would form and finish the staves —and sent to them six samples of rough staves upon which they solicited an offer. On April 20, 1901, the plaintiff addressed to the defendant the following letter:

"Louisville, April 20, 1901.

"Messrs. W. Caraway & Sons, Big Sandy, Tenn.—Gentlemen: Your favor of April 19th received. In reply we beg to offer you $18.00 per thousand for one million first-class ¾x35½ inch red oak staves, guaranteed to be equal to the sample staves received from you on or about April 18, 1901, on which the average width is 5½ inches delivered at our refinery, Louisville, Ky. All subject to our count and cull. Terms: Cash upon receipt. The Kentucky Refining Company to make no allowance for any cull staves and it to be understood that we are to cull and measure up 500 staves from each car and arrive at the average number of culls and width therefrom. We cannot use any cut-off staves, as we only have use for such as can be used in the manufacture of first-class oil barrels. All staves to be delivered within one (1) year from date. We regret that we cannot consistently give you the option of making the contract for 500,000 additional, as this would be entirely too indefinite and we must have a specified amount in order that we may make our calculations correctly. This letter is written in duplicate, so you will kindly sign both copies and return one to us, which will answer in place of a contract.

"Very respectfully,                     Kentucky Refining Company,
                                         R. C. Waggener, Treasurer."

On the 23d of the same month, the defendants accepted the offer and the contract was closed. Subsequently the parties proceeded with its execution, but the proportion of culls thrown out by the plaintiff was much larger than the defendants expected, and the plaintiff measured the staves which it accepted upon the basis of 5½ inches in width of stave for one stave, and claimed that the contract required this. The defendants, supposing the samples which they had sent, but had not measured, were of the width of 5½ inches, continued to deliver the staves by the carload; but not more than about one-quarter of the 1,000,000 staves were delivered within the year. The parties

went on, however, with the performance of the contract without any further stipulation limiting the time for the completion of the contract. Further disagreement occurred about the terms of the contract and about the due measurement of the staves and the proportion of culls thrown out. Finally, after 248,678 staves, according to the measurement of the plaintiff, had been received, the defendants ceased to ship the staves. Some correspondence ensued, in which the plaintiff called for more staves and inquired whether or not the defendants' intended to ship any more. The defendants did not in terms refuse to make further shipments, but did not do so. Some time after the last-mentioned inquiry, the plaintiff rendered a bill for damages sustained on account of the failure to fulfill the contract. The fifth plea alleged: That the defendants were induced to accept the plaintiff's offer for the staves by the fraud and deceit of the plaintiff in representing that the sample staves measured 5½ inches in width; that they had had no previous experience in the business, and did not know in what manner the dimensions of the staves were arrived at, but suppose that the plaintiff had measured the staves by a proper method and found them to meet the requirements of 5½ inches in width; and that they were ignorant of the actual measurements of the samples, not having measured them. The plaintiff moved that this plea be stricken out. The court so ordered, and the defendants excepted. We think there was error in this, if the contract were to be construed as the court construed it—that is, that it stipulated the staves should average 5½ inches in width—a matter to be considered later. The plea was somewhat informal, but it stated the substance of a good counterclaim. Defects in form should have been met by a demurrer, and the proper course was to have required the plaintiff to urge its objection by demurrer or replication. The ground on which the counsel for plaintiff supports the action of the court in this regard is that the defense was in the nature of a set-off, and that in such cases the action and the set-off must both be for liquidated damages, or at least must be founded on contract; whereas, in the case at bar, not only was the plaintiff's claim for unliquidated damages, but the defendants' sounded in tort. But there is a clear distinction between a set-off and a counterclaim, and it has long been settled that to avoid a multiplicity of actions a defendant, when sued upon a contract, may file a counterclaim, even though it be in the nature of a tort arising out of the same transaction, and have it determined in the same suit. But if the contract be construed, as we think it should be, as one for staves which in all respects would average with the samples sent, there would be no ground for the counterclaim, and this question of pleading would become immaterial.

While the plea in abatement was pending and undetermined, the plaintiff gave notice to take the depositions of several witnesses, and the depositions were taken; the defendants not appearing lest they should thereby be deemed to have waived their plea. The depositions related to the merits of the case, and not to any issue then presented. After the depositions had been filed, the defendants moved to suppress them upon the ground that they had been prematurely taken.

This motion was overruled, and an exception taken. Upon the trial they were offered in evidence. The defendants objected to the reading of them upon the grounds assigned for the motion to suppress them. The objection was overruled, the defendants excepted, and the depositions were read to the jury. In this also we think the court erred. The taking of the depositions was premature. No issues had been made to which they related, and no emergency was shown, such as the apprehended death of the witnesses or an expectation of their going abroad and being absent when the depositions could be properly taken or their attendance at the trial secured.

In giving its instruction to the jury, the court construed the contract, and said:

"I instruct you that by that contract the plaintiff bought, and the defendants sold to it 1,000,000 staves to be furnished within one year, and the staves were to be 35½ inches long, ¾ inch thick and to average 5½ inches wide, and equal to the sample received by the plaintiff from the defendants in quality."

The defendants excepted to this construction and contend that the contract was for 1,000,000 red oak staves of the length and thickness specified (which were the same as the actual dimensions of the samples) and of the width of the samples; in other words, 1,000,000 staves of the same kind of timber and of the same dimensions as the samples. There was evidence from which the jury might have found that the samples were of a less width than 5½ inches. We are inclined to think that the latter should be held to be the true interpretation. If the offer of the plaintiff which was accepted by the defendants was intended to mean that the width of the staves would be unaffected by the width of the samples, there was no occasion to refer to them in that connection, and the natural order would have been to have simply stated the width in connection with the other dimensions. The construction of the court seems to ignore the samples as a factor in the contract. The construction the plaintiff insisted upon was neither that of the court nor that of the defendants, but was that the width of particular staves was not controlling, but that the width of all the staves accepted after throwing out the culls should be divided by 5½ inches, and the result would be the count of staves received under the contract. We do not think this could be the natural interpretation of the language of the parties, and, if the plaintiff insisted upon it, as they seem to have done, it furnished fair ground for the defendants to refuse to deliver the staves upon that interpretation. The record shows that evidence was offered by defendants to show that, on an occasion when one of them went to the plaintiff's place of business at Louisville to get an understanding of the cause of their disagreement, an employé to whom, in answer to his complaint the representatives of the plaintiff in its office referred him, and who was an overseer or master in the yards of the plaintiff, stated how the plaintiff measured the staves received from defendants, which was to first run the staves through a jointing machine, and then measure their width as finished up; but this evidence was excluded on the objection of counsel for the plaintiff that the yardmaster was not the representative of the plaintiff, and the defendants excepted. The matter of this

statement was important. The contract did not contemplate the delivery of finished staves, nor a measurement to be made of them after the plaintiff had finished them; but the evidence leaves it doubtful whether the employé could be regarded as the representative of the company in making them. We think, however, that the fair inference is that the yardmaster had charge of the reception and measurement of the staves, and was referred to by those whom the defendant might reasonably suppose to have authority to make the reference. Moreover, the testimony of the plaintiff's manager, who was a witness for the plaintiff, tends to show that the statement made by the yardmaster was true.

Many other assignments of error (there are 49 in all) raise questions of minor importance, many of which may not arise upon a new trial, or may be presented in different form. We have endeavored to sift out and decide those which seem of controlling importance.

The judgment will be reversed, with costs, with a direction to award a new trial.